NELLIE INGRAM, Administratrix, v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 6 April, 1921.)

1. **Railroads—Interstate Commerce—Employer and Employee—Federal Employers' Liability Act—Negligence—Flagmen.**

A flagman upon a freight train engaged in interstate commerce, upon whom alone the duty rested to see that cars placed upon a siding were clear for the passage of the train upon the other track, and then signal the engineer to go ahead, is for the person in charge of the train, and where he has been caught between the two trains and killed by the neglect of his duty to see that the cars on the siding were clear of the other train, this negligence is attributable to him and not to the railroad's engineer or other employees, and when the proximate and only cause of the injury, the plaintiff cannot recover damages of the defendant therefor.

2. **Same—Implements—Safety Appliances—Evidence.**

In an action to recover damages for the killing of the plaintiff's intestate, engaged in interstate commerce, by being caught between the cars on defendant's pass track and the moving train of the defendant on the main track, when it appears that it was the sole duty of the intestate to see that these cars were clear and signal the engineer, his contributory negligence in not having done so is not affected by the fact that certain implements had not been furnished by the defendant for keeping the cars on the pass track from moving, when he knew that such implements had not been furnished, and if they had been, they were unnecessary on account of the grade of the pass track, and when the intestate was experienced and could have safely and reasonably performed his duty under the circumstances.

3. **Railroads—Federal Employers' Liability Act—Negligence—Employer and Employee.**

An action to recover damages against a railroad company for the negligent killing of the plaintiff's intestate, while engaged in interstate commerce, is controlled by the Federal Employers' Liability Act, and thereunder no recovery can be had when the death was caused solely by the negligent act of the intestate.

APPEAL by plaintiff from *Kerr, J.,* at the February Term, 1921, of NEW HANOVER.

This is an action to recover damages for the death of the intestate of the plaintiff, caused, as the plaintiff alleges, by the negligence of the defendant in that (1) the defendant failed to keep a proper lookout down the track; (2) that the defendant failed to have a jack-knife or derailer or other appliance on its storage track at Warsaw.

. On 9 March, 1908, at about 8:30 o'clock of a dark rainy night the intestate of the plaintiff was brakeman on a freight train going from Wilmington to Rocky Mount. As the train approached Warsaw it ran into a pass track for the purpose of letting a passenger train pass on

the main line.   After the passenger train passed, the freight train backed onto the main line and there the engine and tender and three cars were cut off for the purpose of placing the three cars on the storage track at Warsaw.   The engine and the three cars then passed through the pass track and backed into the storage track where the three cars were left.

The intestate of the plaintiff was in charge of this movement of the cars, and it was his duty after the three cars were placed on the storage track to pass down the cars on the storage track, there being then twenty-six or twenty-seven cars on the track, and see that the cars were coupled together and that the cars on the track were in the clear, by which is meant that they were to be far enough from the pass track that there would be no danger to cars or persons passing on the latter track.

It was the duty of the intestate to see that the cars were in the clear, and this duty was not imposed upon any other employee of the train, and it was the duty of the engineer to observe the signals of the intestate and follow them.

The evidence is that the intestate went to the end of the cars on the storage track and that he then signaled the engineer to back down the pass track, and he, the intestate, got up on the tender of the engine, and as the engine backed the intestate was crushed and killed between the tender and cars on the storage track, which had been left by the intestate too close to the pass track.

The intestate was an experienced brakeman and familiar with the conditions at Warsaw, and knew that there was no jack-knife or de-railer there.

It was also in evidence, and uncontradicted, that without a jack-knife or a derailer or any marker that an employee could easily tell whether a car was in the clear.   That he could do so by standing on the rail of the pass track and reaching out, and if his hand did not touch the car on the storage track it was clear and in a place of safety, or he could observe the curvature of the storage track as it left the pass track and if it was beyond the curve it was in the clear.

A derailer is an appliance on the top of the rail and a jack-knife one that when operated separates two rails so that the ends do not come together.   The principal purpose of each is to prevent cars on side tracks from running out on the main line, although they may also operate to indicate the point of clearance.

The evidence shows that when cars were being placed in a track that it was the duty of the employee in charge of the movement where the derailer or jack-knife was located, if there was one in use, and place them so that if a car reached that point it would not be derailed or thrown from the track but would pass over the derailer or jack-knife,

and that after the movement or operation was completed, to go to the point and place the derailer or jack-knife so that it would derail a car instead of letting it pass along the track.

It was also in evidence that at Warsaw there were three tracks—a main track, a pass track, and a storage track, and that the storage track was higher at both ends than in the middle. Also that when a track was built with both ends higher than in the middle, derailers, jack-knives, etc., were not in use, although one witness stated that he had known these appliances to be used in four or five side tracks on the Seaboard system.

It was also in evidence that at one time clearance posts were in use, but that these had been abolished upon petition of the employees because dangerous to them in the operation of trains.

At the conclusion of the evidence his Honor entered judgment of non-suit, and the plaintiff excepted and appealed.

*E. K. Bryan for plaintiff.*
*Rountree & Carr and Carl H. Davis for defendant.*

PER CURIAM. There is no evidence to sustain the first allegation of negligence as it was the duty of the engineer only to keep a lookout for the signals of the intestate, who was then in charge of the movement of the train, and to follow his signals, and all of the evidence shows that he performed this duty.

Nor do we think that the failure to have a derailer or jack-knife had anything to do with the death of the intestate, who knew that there was no derailer or jack-knife in the storage track, and whose duty it was to place the cars and see that they were clear of the pass track, and the responsibility for the performance of this duty rested solely on him.

If a derailer or jack-knife had been in the track and he had performed his duty, before pushing the cars into the storage track, he was required to set the appliances so that the cars would pass over them, and their use would not have prevented the cars from reaching the place where the intestate left them.

He also could easily see where the cars were as they were much more easily perceived than the appliances referred to, and, according to the evidence, he could have ascertained definitely that the cars were not in the clear when he signaled to the engineer to move backward.

It appears therefore that the death of the intestate was caused solely by the failure on his part to perform the duty which had been entrusted to him alone, and under such conditions a recovery cannot be sustained under the Employer's Liability Act, which controls this decision, because the intestate was engaged in interstate commerce.

In *R. R. v. Skaggs,* 240 U. S., 66, an authority relied upon by the plaintiff, the plaintiff, a brakeman, was crushed between two cars because one had been left too near the track, and a recovery was sustained, but upon the ground that there was another brakeman connected with him in the operation of the train, and that the evidence supported the contention of the plaintiff that his injury resulted from the negligence of a fellow-servant, but the Court says, in the course of the opinion, "the statute does not contemplate a recovery by an employee for the consequences of action exclusively his own."

The syllabus in *R. R. v. Wiles,* 240 U. S., 444, is as follows: "There is no room for the application of the rule of comparative negligence established by the Employer's Liability Act of 22 April, 1908 (35 Stat. at L. 65, ch. 149, Comp. Stat. 1913, par. 8657), where the rear brakeman of a parted freight train, disregarding his duty to protect the rear of his train by going back a short distance and giving the warning signals which the carrier's rules required, remained in the caboose and was killed there when a passenger train, which he knew was closely following, ran into the standing train, since his was the causal negligence, even if negligence could be imputed to the carrier from the pulling out of the drawbar which caused the train to break in two, there being no claim that the passenger train was negligently run."

In *Baugham v. R. R.,* 241 U. S., 237, the facts were much more favorable to the plaintiff than in this action, and it was held that the plaintiff had assumed the risk and could not therefore recover.

Affirmed.